1

2

3

4

5

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

6

7

8

9

10

11

12

| | |
|---|---|
| RON VAN METER et al., ) | |
| ) | |
| Plaintiffs, ) | 3:12-cv-00282-RCJ-WGC |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CITY OF WELLS et al., ) | |
| ) | |
| Defendants ) | |

13       This case arises out of sewage backup up into a residence.  Before the Court is a Motion

14  for Summary Judgment (ECF No. 21) and a Motion to Reconsider (ECF No. 22).  For the

15  following reasons, the Court grants the Motion for Summary Judgment and denies the Motion to

16  Reconsider.

17  **I.       FACTS AND PROCEDURAL HISTORY**

18       Plaintiffs Ron and Jody Van Meter have owned and resided at a house located at 356

19  Castle Street in Wells, Nevada since 1989. (Compl. 4, ECF No. 1).  On October 19, 2011,

20  Defendant City of Wells's (the "City") sewer line "failed to function as intended," and raw

21  sewage "invaded" Plaintiffs' basement (the "first incident"). (*Id.* at 4–5).  Plaintiffs contacted

22  Trail 40 Corp., a plumbing company, to inquire into the reason for the sewage. (*Id.* at 5).  Trail

23

24

1 | 40 Corp. advised that "a defective City of Wells sewer line caused the sewage to backup into

2 | Plaintiffs' basement." (*Id.* (emphasis omitted)).  On October 24, 2011, Plaintiffs contacted

3 | Defendant Jolene M. Supp, the City Manager, and requested that the City clean up the mess and

4 | compensate Plaintiffs for the damage to their residence and personal belongings. (*Id.*).  Supp

5 | declined both requests, so Plaintiffs cleaned up the raw sewage in their basement. (*Id.*).

6 | Defendants also did not take action to fix the defective sewer. (*Id.*).

7 | On November 3, 2011, more raw sewage "physically invaded" Plaintiffs' basement from

8 | the same defective sewage line (the "second incident"). (*Id.* at 6).  Plaintiffs contacted Supp and

9 | she again declined to compensate Plaintiffs and clean up the sewage. (*Id.*).  The City still has not

10 | corrected the problem with the sewer. (*Id.*).  As a result of the incident, and because the

11 | ventilation lines for the house are drawn from the basement, Plaintiffs' entire house smells like

12 | sewage. (*Id.*).  Plaintiffs are deterred from cleaning up the sewage themselves because they are

13 | worried the sewer will just leak again. (*Id.* at 7).  They also allege that the sewer is a public

14 | improvement, and "[t]he disposing, transporting, and treating of raw sewage" concerns the whole

15 | community. (*Id.*).  They allege that Plaintiffs have contributed more than their share to the public

16 | undertaking, and the City should compensate Plaintiffs for their trouble. (*Id.*).

17 | Plaintiffs sued the City and Supp on nine nominal causes of action: (1) declaratory relief

18 | under 28 U.S.C. §§ 2201 and 2202; (2) civil constitutional claims under 42 U.S.C. § 1983; (3)

19 | inverse condemnation under Article I § 8(6) of the Nevada Constitution (against the City); (4)

20 | negligence; (5) intentional infliction of emotional distress; (6) trespass; (7) breach of implied

21 | contract (against the City); (8) private nuisance (against the City); and (9) respondeat superior

22 | (against the City). (*See id.* at 9–14).  Defendants moved to dismiss.  The Court dismissed the first

23 |

24 |

1  and ninth claims, as well as the second through eighth claims insofar as they arose out of

2  Defendants' failure to inspect the sewage pipes before the first incident, without leave to amend.

3  The Court refused to dismiss the second through eighth claims insofar as they arose out of

4  Defendants' failure to clean up the sewage, compensate Plaintiffs, and repair the sewage pipe

5  after the first incident.  Defendants have now moved for summary judgment, and Plaintiffs have

6  asked the Court to reconsider the earlier dismissals.

7  **II.     LEGAL STANDARDS**

8  A court must grant summary judgment when "the movant shows that there is no genuine

9  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

10 Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson*

11 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if

12 there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See*

13 *id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

14 claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

15 judgment, a court uses a burden-shifting scheme:

16 >        When the party moving for summary judgment would bear the burden of proof at
>        trial, it must come forward with evidence which would entitle it to a directed
17 >       verdict if the evidence went uncontroverted at trial.  In such a case, the moving
>        party has the initial burden of establishing the absence of a genuine issue of fact
18 >       on each issue material to its case.

19 *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

20 and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden

21 of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

22 presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

23

24

1   demonstrating that the nonmoving party failed to make a showing sufficient to establish an

2   element essential to that party's case on which that party will bear the burden of proof at trial.

3   *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden,

4   summary judgment must be denied and the court need not consider the nonmoving party's

5   evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

6         If the moving party meets its initial burden, the burden then shifts to the opposing party

7   to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

8   *Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

9   party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11  versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

12  626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

13  by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d

14  1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

15  allegations of the pleadings and set forth specific facts by producing competent evidence that

16  shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

17        At the summary judgment stage, a court's function is not to weigh the evidence and

18  determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

19  U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

20  to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely

21  colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

22  ///

23
4 of 9

24

1 | **III.    ANALYSIS**

2 |     Defendants adduce the affidavit of Dennis Calton, a public works employee with the

3 | City.  Calton responded to the first incident with fellow employee Gus Villalobos. (*See* Calton

4 | Dep. 11–13, Apr. 10, 2013, ECF No. 21-1, at 52).  Upon using a "jet rooter" to clear the line

5 | downstream from Plaintiffs' house, Calton discovered that "some shop towels and a rag like a T-

6 | shirt or something" had been causing the blockage. (*See id.* 13, 16).  Calton indicated that there

7 | were twelve residences upstream from the blockage (seven single-family homes and one five-

8 | residence apartment building), and there was no way to know which residence was the source of

9 | the items simply from inspecting the blockage itself. (*See id.* 18, 26).  Calton told Jody Van

10 | Meter she could "put a back check in the system" and that "[t]hey are not a complete failsafe, but

11 | a lot of times they will keep something from coming back in when the line does plug up." (*Id.*

12 | 19, 21).

13 |     Defendants also adduce the affidavit of Jason Pengelly, the public works supervisor for

14 | the City. (*See* Pengelly Dep. 12, Apr. 10, 2013, ECF No. 21-1, at 62).  Pengelly was on leave

15 | during the first incident, but Calton had verbally reported it to him. (*Id.* 20–21).  Pengelly

16 | responded to the second incident himself and found a blockage similar to the blockage Calton

17 | had reported from the first incident, i.e., "[h]eavy duty paper shop towels, like the ones you can't

18 | even tear." (*Id.* 21, 24).  The blockage was not a remnant of the first incident, but rather new

19 | material, because no foreign material from the first incident could have survived the jet rooter,

20 | which creates pressure of 1500–2000 pounds per square inch. (*Id.* 22).  The foreign material

21 | would have caused a blockage even if the pipe had been bigger; it would simply have taken a bit

22 | longer to clog. (*Id.*).  There were only three houses and one apartment complex upstream from

23 |

24 |

1   the blockage, so the culprit must have put the material into the line from one of those residences.

2   (*Id.* 25).

3        Defendants have satisfied their initial burden on summary judgment to show that there

4   was no deliberate indifference or negligence on their part, negating any constitutional, IIED, or

5   negligence claim.  Nor was there any intent to invade Plaintiff's property, negating a trespass,

6   takings, or condemnation claim.  Nor was the sewage backup the result of any voluntary action

7   by the City on its own land adjacent to Plaintiffs', negating a nuisance theory.  Defendants have

8   provided evidence negating any intentional act by them causing any damage.  The evidence

9   shows that the second incident was caused by one of Plaintiffs neighbors, or perhaps even by

10  Plaintiffs, but there is no evidence it was caused by Defendants.  At most, Plaintiffs can accuse

11  Defendants of negligence in failing to continuously inspect and maintain the sewer lines, but, as

12  Defendants have noted, they are immune from claims based upon such allegations pursuant to

13  Nevada Revised Statutes section 41.033.  A person may not sue a municipality or its employees

14  for:

15          (a) [f]ailure to inspect any building, structure, vehicle, street, public
            highway or other public work, facility or improvement to determine any hazards,
16          deficiencies or other matters, whether or not there is a duty to inspect; or

17          (b) [f]ailure to discover such a hazard, deficiency or other matter, whether
            or not an inspection is made.
18
19  Nev. Rev. Stat. § 41.033(1)(a)–(b).  Municipalities in Nevada are immune from suit for a failure

20  to inspect sewer systems in order to discover obstructions or other deficiencies.  *See Fischmann v.*

21  *City of Henderson*, 556 P.2d 923, 924 (Nev. 1976) (holding that the City of Henderson was

22  immune from suit for failing to inspect sewage lines after raw sewage leaked in to the plaintiff's

23  house); *Schroeder v. Ely City Mun. Water Dep't*, 910 P.2d 260, 261–62 (Nev. 1996) (holding

24

1  that the City of Ely was immune from suit for failing to maintain a sewer when sewage leaked

2  into the plaintiffs' businesses).  The Court previously noted that in *Fischmann* and *Schroeder*,

3  the plaintiffs sued after only a single incident of flooding, *see Fischmann*, 556 P.2d at 923;

4  *Schroeder*, 910 P.2d at 261, but that here, Plaintiffs allege that Defendants did not fix the

5  problem after the first flooding, thereby causing the second incident.  The Court therefore

6  permitted the second through eighth claims to proceed to discovery insofar as they were based

7  upon the second incident, because it was possible Plaintiffs could show Defendants actually

8  caused the second incident through actions for which they would not be immune, e.g., by causing

9  a clog in the line itself or through some other affirmative action causing the second flooding.

10  But the only evidence adduced indicates that Defendants fixed the problem after the first incident

11  and that the second incident was not caused by any intentional act or even negligence on

12  Defendants' part, except insofar as Plaintiffs argue that Defendants were negligent in not

13  inspecting the sewer lines to keep them free of obstructions, which claim is barred by section

14  41.033.

15      In response, Plaintiffs first argue that the Motion for Summary Judgment is untimely.

16  They are correct.  The Scheduling Order indicated May 27, 2013 as the deadline for filing

17  dispositive motions, and Defendants filed the Motion for Summary Judgment on May 28, 2013.

18  Defendants do not have the benefit of the holiday rule, because the Scheduling Order specified

19  the date directly and did not require any computation.  However, because the Motion is

20  meritorious, an extension to consider it is much more in the interest of judicial economy than to

21  strike it and require a trial.  Accordingly, the Court grants a one-day extension.

22

23

7 of 9

24

1   As to the merits, Plaintiffs adduce several relevant pieces of evidence.  First, Plaintiffs

2   adduce City Manager Jolene Supp's deposition transcript. (*See* J. Supp. Dep., Apr. 10, 2013,

3   ECF No. 23-1, at 5).  Supp confirmed Calton's and Pengelly's testimony as to the cause of the

4   blockages and testified generally as to the sewer system but did not indicate any affirmative

5   actions taken by the City that could have caused the blockage. (*See generally id.*).  Although

6   counsel questioned her repeatedly about the City's inspection and maintenance policies and the

7   sufficiency of the City's efforts to discover the culprit(s) who flushed the foreign material and to

8   inform residents not to flush foreign material, those questions were directed at discovering facts

9   that might lead one to conclude that the City was negligent in the way it maintained and

10   inspected the sewer lines.  The City is immune from such claims.

11   Plaintiffs also adduce Calton's and Pengelly's deposition transcripts.  They did not testify

12   as to any affirmative act taken by any agent of the City causing the blockage but only that they

13   failed to discover exactly who was flushing the foreign material.  Jody and Ron Van Meter

14   testified consistently with Calton and Pengelly and did not indicate any affirmative action taken

15   by the City to cause the invasion. (*See generally* J. Van Meter Dep., Apr. 9, 2013, ECF No. 23-2,

16   at 4; R. Van Meter Dep., Apr. 9, 2013, ECF No. 23-2, at 17).

17   Plaintiffs have not satisfied their shifted burden to show a genuine issue of material fact

18   as to any of their claims.  Plaintiffs adduce no evidence indicating that Defendants took any

19   affirmative action indicating any intent to cause the invasion or that Defendants were negligent

20   in any way for which they are not immune.  At most, the evidence shows that Defendants failed

21   to continuously inspect the sewer line to keep it free of debris, and, again, Defendants are

22   immune from claims arising out of this kind of alleged negligence.  The proper defendant in this

23

24

1   case is the party that flushed the foreign material, as there is no genuine dispute of fact that this is

2   what caused the blockage.  There is no evidence adduced that the City or its agents flushed the

3   material, there can be no *res ipsa* inference where it is clear that the occupants of twelve private

4   residences had the ability to cause the blockage by flushing foreign material, and the City is

5   immune from claims based upon its failure to discover the foreign material. *See Fischmann*, 556

6   P.2d at 924 ("It appears clear to this court that the legislative intent was that political

7   subdivisions are not to be held liable to lawsuit for failure to inspect sewer systems in order to

8   discover obstructions or other malfunctionings and deficiencies.").

9                                   **CONCLUSION**

10        IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 21) is

11   GRANTED.

12        IT IS FURTHER ORDERED that the Motion to Reconsider (ECF No. 22) is DENIED.

13        IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

14        IT IS SO ORDERED.

15   DATED this 30th day of July, 2013.

16

17                                       ROBERT C. JONES
                                    United States District Judge

18

19

20

21

22

23

24